IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| David Sarvghad, ) | Civil Action No. 5:15-1103-MGL-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION OF |
| ) | MAGISTRATE JUDGE |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). The issue before the court is whether the Commissioner's decision is supported by substantial evidence. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.    Relevant Background

   A.    Procedural History

Plaintiff filed an SSI Application dated August 2, 2012 alleging a disability onset date of June 1, 2005.[1] Tr. 183. Plaintiff's claims were denied initially and on reconsideration. Tr. 105, 118. Plaintiff requested a hearing before an administrative law judge ("ALJ"), Tr. 147, and a hearing was held on April 30, 2014, Tr. 57-92. In a decision dated June 20, 2014, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 38-52. The Appeals

---

[1] Plaintiff previously applied for SSI benefits on February 24, 2011. Tr. 176-82. That claim was denied on June 8, 2011. Tr. 93.

Council subsequently denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. Tr. 3-6. On March 8, 2015, Plaintiff brought this action seeking judicial review of the Commissioner's decision. ECF No. 1.

B.    Plaintiff's Background

Plaintiff was born in July 1990, and was 15 years old on June 1, 2005, the date of his alleged disability onset, 20 years old on his protective filing date of February 24, 2011, and 23 years old on April 30, 2014, the date of the hearing before the ALJ. *See* Tr. 183, 252. Plaintiff completed the 11th grade and worked for two brief periods in 2007 and 2008 as a bagger in a grocery store. Tr. 232-33. Plaintiff seeks SSI because of schizophrenia. Tr. 232.

C.    The Administrative Proceedings

1.    Plaintiff's Testimony

Plaintiff appeared, along with his counsel, at the April 30, 2014 administrative hearing. Plaintiff's father, Bizhan Sarvghad, and Vocational Expert ("VE") Betty Lindsey Hale were also present at the hearing. Prior to taking any testimony Plaintiff's counsel noted that Plaintiff had been in jail "for about 16 months" and requested that Plaintiff's 2011 case be reopened. Tr. 62. Plaintiff's counsel also noted that Plaintiff had been hospitalized in the past year at three different mental facilities. Tr. 63. The ALJ confirmed Plaintiff's diagnosis of schizophrenia with a paranoia component, psychotic disorder not otherwise specified, and marijuana use. *Id.*

The ALJ asked Plaintiff if he was "all right" when he took his medication. Tr. 64. Plaintiff testified that he was, but he would stop taking it because it made him feel drowsy. *Id.* Plaintiff testified that he was currently taking his medication and was willing to continue taking it as long as necessary. *Id.* The ALJ asked Plaintiff why he was unable to work if he was on his

2

medication, and Plaintiff responded that the medication interfered with his thinking and his ability to communicate with people. *Id.* Plaintiff testified that because of his schizophrenia he would not be able to work in a job even if he did not have to communicate with anyone. Tr. 64-65. Plaintiff testified that his illness caused him to hear voices "[t]elling [him] to do things." Tr. 65. Plaintiff testified the voices would tell him to leave work. Tr. 66. Plaintiff testified that he had not smoked marijuana in three years. Tr. 68. Referencing his incarceration in Georgia, Plaintiff testified that he was jailed for assaulting his grandfather. *Id.* Plaintiff testified that he was not looking for a job because his father told him that he did not think he should. Tr. 69.

In response to questioning from his counsel Plaintiff testified that during the day he writes, reads, watches TV or talks to his mother's friend, but because he is on house arrest and is wearing a monitor he is "not able to do much." Tr. 70, 76. Plaintiff testified that he has to wear the monitor for another year and a half. *Id.* Plaintiff testified that he has not assaulted anyone other than his grandfather but stated that he "accidently pushed" a woman in a hospital and was arrested for that incident. Tr. 71. As a result he was required to report every Monday for six months to ensure he was taking his medication. *Id.* Plaintiff testified that in the past he had gotten speeding tickets and had his driver's license suspended for six months for driving without insurance. Tr. 72.

Plaintiff testified that he experiences restlessness when taking his medication but has a "side effect pill for it." Tr. 73. Plaintiff testified that before he was on house arrest, while he was on his medication he was able to go out and socialize with his friends. *Id.* Plaintiff testified that he is being treated at Greer Mental Health and they instruct him to continue taking his medications of Haldol and Prozac. Tr. 74. Plaintiff testified that in addition to making him feel

drowsy, he experiences dry mouth and involuntary movements. Tr. 75. When asked if he could do a simple task for two hours Plaintiff testified that he did not know if he could do it. Tr. 77.

### 2. Lay Witness Testimony

Plaintiff's father, Bizhan Sarvghad ("Mr. Sarvghad") testified that Plaintiff began demonstrating significant mental problems when "he was around 14-15 years old." Tr. 78. Mr. Sarvghad stated that Plaintiff was not doing well in school and was "acting different." When he was taken to the doctor tests were run and he was diagnosed with schizophrenia. *Id.* Mr. Sarvghad testified that Plaintiff was taken to different doctors who prescribed different medications, which they kept changing. Tr. 79. He testified that if the medication worked then Plaintiff would seem to be more stable but that Plaintiff still experienced symptoms related to concentration and hallucinations. *Id.* Mr. Sarvghad testified that although Plaintiff does not discuss his hallucinations Mr. Sarvghad "can see it" because he has "been around [Plaintiff] long enough to see how he acts and what he does." Tr. 80. Mr. Sarvghad testified that Plaintiff does not watch much TV while at home because Plaintiff is bothered by the noise. *Id.* Mr. Sarvghad testified that Plaintiff "paces a lot and walks around the house." *Id.* Mr. Sarvghad testified that he sometimes takes Plaintiff out to eat or takes him shopping, but Plaintiff does not play sports, does not listen to rock music, and does not attend religious services. Tr. 81. Mr. Sarvghad testified that Plaintiff is studying to take the GED and he reads his GED book. *Id.* When asked why Plaintiff cannot work Mr. Sarvghad testified that Plaintiff has mental issues and he did not believe Plaintiff could handle a job. Tr. 83. He testified that Plaintiff has "a hard time dealing with people. And a lot of people around him, and noise, and hearing voices, and he's having really issues with them." *Id.* Mr. Sarvghad testified that he did not believe Plaintiff would be able to work in a quiet room by himself doing a simple, routine job because Plaintiff "would have a

4

hard time understanding what he had to do." Tr. 84. He stated that would be true with or without medication but without medication "it would be a whole lot worse, a lot worse." *Id.*

        3.     VE's Testimony

VE Betty Lindsey Hale then testified. Tr. 84-91. The ALJ noted there was no past relevant work ("PRW") to consider in the case and posed a hypothetical question to the VE. The ALJ asked her to assume an individual the same age as Plaintiff, who was 22 as of his protective filing date and presently 23 years old, who completed the ninth grade, and had no work experience and skill set, with the following limitations:

> There are not any exertional limitations, there are not any postural limitations, there are not any manipulative limitations. Environmentally, the person should avoid even moderate exposure to hazards. Examples of hazards are such things as the use of moving machinery and exposure to unprotected heights. Non-exertionally, the limitations are as follows. The work which can be done is limited to the performance of simple, routine, and repetitive tasks in a work environment free of any kind of fast paced production requirement. The work can involve only simple, work related decisions. There can be few, if any, changes in the work place. Any such changes should be introduced on a gradual basis. The work should primarily be with objects and things, not with people. There can only be minimal interaction with the general public, minimal is defined as zero to six percent of the work day. The person can be around coworkers throughout the day with occasional interaction with those coworkers.

Tr. 87. The ALJ asked the VE whether there would be work available for a person subject to those limitations. The VE responded in the affirmative noting that "with no other limitations there would be positions available." *Id.* She provided the following examples: hand packing, DOT code 920.587-018, unskilled, SVP of 2, with 350,000 available nationwide; machine attendant, DOT code 920.685-082, unskilled, SVP of 2, with 300,000 available; and simple cleaning jobs, DOT code 323.687-014, unskilled, SVP of 2, with approximately 550,000 available nationally. Tr. 88.

5

The ALJ posed a second hypothetical with a person who would be incapable of sustaining sufficient concentration, persistence, and pace that would allow that individual to perform even simple, routine, and repetitive tasks on a regular, continuing, and sustained basis. Tr. 88-89. In addition, the person would miss more than three days of work a month on a regular basis. Tr. 89. The VE confirmed that those general and specific limitations would preclude competitive work at any and all exertional levels. *Id.* The VE testified that employers tolerate one-to-two absences per month, although some will allow more. The VE further testified that employers "will allow a 30 minute meal break and then typically a 15 minute morning and afternoon break." *Id.* She stated that anything other than that would be an accommodation that the employer would have to allow but it was not consistent with competitive employment. *Id.* The VE stated that she relied on the DOT and her training and experience as an evaluator for expressing her opinion. Tr. 90. Plaintiff's counsel had no questions for the VE. Tr. 91.

II.     Discussion

    A.     The Commissioner's Findings

In his June 20, 2014, decision, the ALJ made the following findings of fact and conclusions of law:

1.     The claimant has not engaged in substantial gainful activity since August 2, 2012, the application date (20 CFR 416.971 *et seq.*).

2.     The claimant has the following severe impairments: schizophrenia, paranoid type; psychotic disorder, not otherwise specified; and a history of drug use, in remission (20 CFR 416.920(c)).

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all

6

      exertional levels but with the following nonexertional limitations: he should avoid moderate exposure to hazards, such as the use of moving machinery and exposure to unprotected heights; work is limited to simple, routine repetitive tasks in a work environment free of fast past [sic] production requirements; work can involve only simple work related decisions with few if any changes; changes should be introduced on a gradual basis; work should be with objects and things, not people; he should have only minimal interaction with the general public, 0% - 6% of the workday; in addition, he can be around co-workers throughout the day with occasional interaction with those co-workers.

5.    The claimant has no past relevant work (20 CFR 416.965).

6.    The claimant was born on July 16, 1990 and was 22 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.    The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.   The claimant has not been under a disability, as defined in the Social Security Act, since August 2, 2012, the date the application was filed (20 CFR 416.920(g)).

Tr. 43- 52.

    B.    Legal Framework

        1.    The Commissioner's Determination-of-Disability Process

The Act provides that SSI benefits are available to individuals who otherwise satisfy certain criteria not at issue here and are "disabled," defined as being:

> . . .unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

7

42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g).  The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434

F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C. Analysis

Plaintiff asserts that the ALJ (1) erred in his evaluation of the lay witness's testimony,[3] (2) erred in his consideration of issues related to Plaintiff's failure to obtain treatment, and (3) failed to properly evaluate Plaintiff's credibility. Pl.'s Br. 2, ECF No. 12.

1. ALJ's Consideration of the Lay Witness's Testimony

Plaintiff argues that the ALJ mischaracterized the testimony of his father given at the administrative hearing and failed to mention key portions of his testimony as it related to Plaintiff's inability to work. Pl.'s Br. 24-25. The Commissioner asserts the ALJ "adequately considered" the testimony of Plaintiff's father and further evaluation of the testimony "was unnecessary because it was merely cumulative and duplicative of Plaintiff's own statements concerning his limitations, which the ALJ found not entirely credible." Def.'s Br. 12, ECF No. 13. In response Plaintiff argues: "This is not a situation where the ALJ considered and rejected lay testimony by finding it duplicative. Rather, the ALJ considered the lay testimony and found that it supported his residual functional capacity assessment; this was a misstatement of fact." Pl.'s Reply 5, ECF No. 14.

---

[3] Although listed as two issues—mistaken finding of fact and failure to mention lay statements—because both relate to the lay witness's testimony the undersigned considers them together.

SSR 96-7p provides a policy interpretation for assessing the credibility of a claimant's statements. The regulation requires the ALJ to consider the entire case record, including statements from "other persons," when determining the credibility of a claimant's statements. SSR 96-7p, 1996 WL 374186 at *2. Other persons may include non-medical sources such as spouses, parents, caregivers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. § 416.913(d)(4). These lay witnesses may provide evidence "to show the severity of [a claimant's] impairments and how it affects [a claimant's] ability to work . . . ." 20 C.F.R. § 416.913(d). Subjective testimony by lay witnesses may be discounted when there is contrary evidence within the record and there is sufficient objective medical evidence that allows the fact finder to determine disability. *See Laws v. Celebrezze,* 368 F.2d 640, 644 (4th Cir. 1966) (citing *Underwood v. Ribicoff,* 298 F.2d 850, 852 (4th Cir. 1962)).

Here, the ALJ considered the testimony of Plaintiff's father and made the following determination in his decision:

> Mr. Sarvghad testified that the claimant began to demonstrate difficulty with mental problems around 14-15 years of age. He testified the claimant's doctors immediately diagnosed his condition and different medication regimes were tried. Mr. Sarvghad noted that when the claimant took his medications, he was more stable. Mr. Sarvghad testified he would take his son outside some, but the claimant mainly sat at his home, tried to read, and wanted to get his GED. This testimony was considered and the testimony supports the residual functional capacity.

Tr. 49. Plaintiff argues the ALJ mischaracterized the lay witness testimony by omitting Mr. Sarvghad's opinion that Plaintiff could not work and by omitting the portion of his testimony that noted even with his medications Plaintiff experienced symptoms. The undersigned disagrees. The regulations require the ALJ to *consider* the testimony of lay witnesses—which is what the ALJ did in this case. The ALJ is not obligated to consider any opinions that Plaintiff is "disabled" or "unable to work" because those are "issues reserved to the Commissioner because

11

they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 416.927. Furthermore, here the ALJ found Mr. Sarvghad's testimony supported the ALJ's RFC determination, which took into account Plaintiff's mental impairments, the side effects from his medication, and Plaintiff's testimony that when he takes his medication his symptoms are controlled. Tr. 48-49. The undersigned recommends a finding that the ALJ did not err in his treatment of Mr. Sarvghad's testimony.

        2.        ALJ's Consideration of Plaintiff's Failure to Follow Treatment Recommendations

Plaintiff asserts that his failure to take his medications "heavily influenced" the ALJ's finding that Plaintiff was not disabled. Pl.'s Br. 26. Plaintiff argues that ALJ should not have drawn any inferences regarding his lack of compliance because his mental impairment "was the justifiable cause for his failure to follow treatment." *Id.* at 27 (citing SSR 96-7p and SSR 82-59[4]). The Commissioner contends that "contrary to Plaintiff's argument, the ALJ did not find that Plaintiff was not disabled because Plaintiff failed to follow prescribed treatment (Tr. 48-52). Instead, the ALJ reasonably found, as part of his analysis of Plaintiff's credibility, that Plaintiff's allegations were less credible, in part, because Plaintiff was occasionally noncompliant with medications (Tr. 48-51)." Def.'s Br. 15.

As noted above, SSR 96-7p pertains to assessing the credibility of an individual's statements. SSR 96-7p, 1996 WL 374186. The ruling provides that an individual's statements may be less credible if the medical records show the individual is not following the prescribed treatment and there are no good reasons for this failure. *Id.* at *7. "However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a

---

[4] Plaintiff concedes in his Reply Brief that, as pointed out by the Commissioner, SSR 82-59 is not applicable in this case because that ruling applies only when an ALJ has determined that a claimant is disabled, but then finds the claimant is not entitled to benefits due to failure to obtain treatment. Pl.'s Reply at 6. Here, the ALJ did not find Plaintiff to be disabled.

12

failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.*

At Step Two of the sequential evaluation process the ALJ identified Plaintiff's severe impairments of schizophrenia, paranoid type; psychotic disorder, not otherwise specified; and a history of drug use, in remission. Tr. 43. In his discussion of Plaintiff's mental impairments the ALJ considered Plaintiff's treatment and hospitalizations noting the effects of Plaintiff's non-compliance with medications and the improvement in his condition once stabilized on medication. Tr. 43-44. In determining Plaintiff's RFC the ALJ noted the following:

> The claimant stated in a medical record that he would get in trouble, when he went off his medications (Exhibit 5F). However, he later stated that he felt his medications were optional (Exhibit 9F). The claimant's credibility is severely compromised when he continues to compromise his treatment plans.

Tr. 49.[5] The ALJ also noted that Plaintiff's GAF scores were consistent with other evidence in the record as reflected in the fact that Plaintiff's "functioning can rebound so quickly once he is compliant with treatment and medications." Tr. 49 at n.1. The ALJ further found that when Plaintiff "was placed back on his medications and he was compliant, the claimant stabilized. As soon as the claimant left the facilities, the claimant consciously went off his medications and placed himself in unsafe conditions." Tr. 50. The ALJ considered the opinions of medical providers and gave great weight to the 2011 consultative examination and opinion of David Price, Ph.D.; the 2012 opinion of Adrianne McGregor, MSW, from Greer Mental Health; and the 2014 opinion of Laura Lowenbergh, M.D., with the S.C. Department of Mental Health. *Id.* These

---

[5] Exhibit 5F contains treatment records from Greer Mental Health Center from January 2011 through July 2012. *See* Tr. 327-55. Exhibit 9F contains treatment notes related to Plaintiff's involuntary admission into Three Rivers Behavioral Health Center in September 2013. *See* Tr. 418-66.

opinions indicated that when Plaintiff was on his medications he was "stable" and "able to function well." *Id.*

It is true that the ALJ noted Plaintiff's noncompliance with regard to taking his medications. While noncompliance with prescribed medical treatment may be a basis for denying benefits, *see* 20 C.F.R. § 416.930; SSR 82-59, in this case it does not appear that the ALJ based his disability determination on Plaintiff's noncompliance. Even after acknowledging Plaintiff's noncompliance the ALJ proceeded to evaluate Plaintiff's mental impairments using the special technique set out in the regulations and the remainder of the sequential evaluation process. *See* 20 C.F.R. § 416.920a.  The ALJ's references to Plaintiff's behavior while on his medication do not indicate that the ALJ, as alleged by Plaintiff, "relied heavily on noncompliance" in making his decision or that he "implicitly found noncompliance as the basis" for finding that Plaintiff was not disabled. *See* Pl.'s Br. 32; *see  Oliveira v. Astrue*, No. CA 0:10-537-RMG-PJG, 2011 WL 1832700, at *7 (D.S.C. Apr. 13, 2011) *report and recommendation approved,* No. 0:10-CV-537 RMG, 2011 WL 1831768 (D.S.C. May 12, 2011) (finding that plaintiff did not show that the ALJ relied on noncompliance as the basis for finding her not disabled and could not demonstrate that the ALJ violated SSR 82–59). At no point in his decision did the ALJ find that Plaintiff was not disabled because he failed to obtain treatment. Instead he referred to Plaintiff's noncompliance as a reason for finding him less than credible. Under SSR 96-7p noncompliance is a factor to be considered when determining credibility.

### 3. ALJ's Consideration of Plaintiff's Credibility

Plaintiff asserts the ALJ failed to provide adequate reasons for his credibility determination and failed to properly take into account his mental impairment. Pl.'s Br. 32-34.

14

The Commissioner argues the ALJ explained his reasoning for finding Plaintiff not fully credible and substantial evidence supports his finding. Def.'s Br. 15.

In assessing a claimant's credibility, the ALJ must follow a two-step process. Before considering a plaintiff's subjective complaints the ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess the claimant's credibility regarding the severity of his subjective complaints. *See* SSR 96-7p, 1996 WL 374186; *see also* 20 C.F.R. § 416.929; *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996). The requirement of considering a claimant's subjective complaints does not mean the Commissioner must accept those complaints on their face. The ALJ may consider the claimant's credibility in light of his testimony and the record as a whole. This part of the ALJ's analysis requires him to weigh Plaintiff's complaints against "all the available evidence, including [Plaintiff's] medical history, medical signs, and laboratory findings," and "any other evidence related to the severity of the impairment, such as evidence of [Plaintiff's] daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Craig*, 76 F.3d at 595 (internal quotation marks and citations omitted).

If the ALJ rejects a claimant's testimony about a claimant's pain or physical condition, he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported

by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

Here, the ALJ properly set out his duty to assess the credibility of a claimant's statements concerning symptoms. Tr. 47. The ALJ found, "[a]fter careful consideration of the evidence, . . . that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found his statements about the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Tr. 48. The ALJ addressed Plaintiff's mental impairments finding that Plaintiff had "less limitation with social activity because the claimant testified that he did have friends, he was just currently homebound because of his house arrest." Tr. 48. Further the ALJ noted medical records where "claimant denied any other problem, other than needing a plan for his life"; "claimant stated he wanted to work, once he was on probation"; "claimant denied any symptoms; he denied any hallucinations or paranoid delusions"; and a treatment note in which Plaintiff "said he was able to do all his activities of daily living." *Id*. The ALJ noted that Plaintiff's credibility was harmed when Plaintiff continued to compromise his treatment plans. Tr. 49. The ALJ also cited to Plaintiff's testimony that "his symptoms are well controlled by his medication regime, when he takes his medication." *Id.*

Plaintiff argues these "statements against interest" corroborate his credibility and do not provide a basis for discounting his credibility. Pl.'s Br. 33. The Commissioner counters that credibility determinations are within the discretion of the ALJ and "as long as the ALJ explains his reasoning and there is evidence supporting his reasoning, a reviewing court must affirm the ALJ's credibility determination." Def.'s Br. 15.

16

When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. *Hays,* 907 F.2d at 1456. It is not the responsibility of this court to determine the weight of the evidence. *Id.* Here, the ALJ pointed to evidence in the record to support his conclusion that Plaintiff was not totally credible. Therefore, he satisfied his duty under the applicable regulations and law and did not err in finding claimant not fully credible.

III.     Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under the Act, it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

March 29, 2016                                                     Kaymani D. West
Florence, South Carolina                                  United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**